MEYER
HENDRICKS
& BIVENS, PA
ATTORNEYS AT LAW

Phoenix Corp. Ctr.
3003 N. Central Ave.
Suite 1200
P.O. Box 2199
Phoenix, Arizona
85001-2199

Telephone
602-604-2200

Facsimile
602-263-5333

1 Jennifer P. Nore, No. 004951
David W. Cowles, No. 021034
2 MEYER HENDRICKS & BIVENS, PA
3003 North Central Avenue
3 Suite 1200
Phoenix, Arizona 85012-2915
4 (602) 604-2200
jpnore@mhb-law.com
5 dcowles@mhb-law.com

6 David H. Youssefi, No. 019376
BEST WESTERN INTERNATIONAL, INC.
7 6201 North 24th Parkway
Phoenix, Arizona 85016-2023
8 (602) 957-5758
(602) 957-5551
9 david.youssefi@bestwestern.com

10 Attorneys for Plaintiff

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| BEST WESTERN INTERNATIONAL, INC., an Arizona corporation, | NO. |
| Plaintiff, | |
| vs. | **COMPLAINT** |
| YIELD CHANNEL, INC., a Florida corporation; CHRISTINA S. WINSTON, an individual; ARTHUR I. WINSTON, an individual, | (JURY TRIAL DEMANDED |
| Defendants. | |

For its Complaint, Plaintiff Best Western International, Inc. ("Best Western") alleges as follows:

## PARTIES

1. Plaintiff Best Western is a corporation organized and existing under the laws of the State of Arizona. Best Western's principal place of business is Phoenix, Arizona.

2. Defendant Yield Channel, Inc. ("Yield Channel") is a Florida corporation. Its principal place of business is Orlando, Florida.

3. On information and belief, Defendant Christina S. Winston ("Christina Winston") is a Florida resident. Christina Winston is the President of Yield Channel.

4. On information and belief, Defendant Arthur I. Winston ("Arthur Winston") is a Florida resident. Arthur Winston is the Vice President of Yield Channel.

5. Christina Winston and Arthur Winston own and operate Yield Channel, and operate it under the trade names Yield-O-Matic, Yield-O-Matic.com, and Channel Boss (collectively, "Yield-O-Matic").

6. On information and belief, Defendants have done and continue to do business in Arizona.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331, 1338(a) and 1338(b). The Court has pendent jurisdiction over the common law claims pursuant to 28 U.S.C. § 1367.

8. Best Western's claims arise in the District of Arizona, and Defendants' conduct has caused and continues to cause harm to Best Western in Arizona. Venue is therefore proper in the District of Arizona pursuant to 28 U.S.C. §§ 1391(b).

## GENERAL ALLEGATIONS

### Best Western and Its Marks

9. Best Western operates in North America as a membership organization of more than 2,000 independently owned and operated hotels, and licenses its brand to over 1,800 additional independently owned and operated hotels in 80 countries and territories internationally.

10. Best Western provides its North American member hotels ("Member Hotels") with various services, including a global telephone and Internet reservation system (the "Best Western Reservation System"); marketing and advertising of the Best Western brand and Best Western Member Hotels; collective purchasing of hotel equipment, furnishings and supplies; and organization of regional, national and international members' meetings.

1      11.     Best Western Member Hotels operate under the Best Western family of
2  trademarks, including one or more of the marks identified in Exhibit 1 (the "BEST
3  WESTERN Marks").  The mark BEST WESTERN has been used by Best Western
4  since at least as early as 1946.  The BEST WESTERN Marks are licensed by Best
5  Western for use by its Member Hotels to designate, among other things, the source and
6  affiliation of the Member Hotels.
7      12.     Many of the BEST WESTERN Marks are the subject of existing U.S.
8  federal trademark registrations.  For example, Best Western owns an incontestable
9  federal trademark registration, U.S. Reg. No. 1432431 for BEST WESTERN for "hotel,
10 motel and resort hotel services."  This registration is valid and subsisting and is
11 conclusive evidence of Best Western's ownership of the BEST WESTERN mark, the
12 validity of the BEST WESTERN mark and Best Western's exclusive right to use the
13 mark in commerce.
14     13.     Best Western also owns extensive common law trademark rights in the
15 BEST WESTERN mark for a variety of hotel, motel and resort hotel services as a result
16 of its use and promotion of this mark in commerce.
17     14.     Best Western hotels use a similar combination of coloring, text and
18 wording in their signs that is recognizable at a glance.  This design is shown below:



22 (the "BEST WESTERN Logo").  Best Western owns an incontestable federal
23 registration for its BEST WESTERN Logo, U.S. Reg. No. 2105546 for "hotel, motel
24 and resort hotel services."  This registration is valid and subsisting and is conclusive
25 evidence of Best Western's ownership of the BEST WESTERN Logo, the validity of
26 the BEST WESTERN Logo and Best Western's exclusive right to use the BEST
27 WESTERN Logo in commerce.
28

15. On information and belief, the BEST WESTERN Marks are valid and enforceable.

**Best Western's Computer System**

16. Among the services that Best Western provides to its Member Hotels is the ability to access data stored on secure computer servers located in Arizona and owned and operated by Best Western (the "Proprietary Best Western Computer System"). The Proprietary Best Western Computer System contains sensitive, proprietary and confidential corporate information, such as company news, directories, schedules, marketing and sales updates, CEO communications, information regarding the meetings of its Board of Directors, and the like. The Proprietary Best Western Computer System also includes tools that, among other things, allow Member Hotels to view and update hotel rate information for rooms that are booked through the Best Western Reservation System.

17. Best Western owns and operates a publicly accessible website (the "Public Website") that a user may visit and "click into" unsecured web-pages designed generally for use by third-party vendors. The Public Website also allows Member Hotels and their employees to access the Proprietary Best Western Computer System by entering a "User ID" and "Password" (collectively "Confidential Login Information") and agreeing to the posted Terms of Use. Under the Terms of Use only Best Western, its Member Hotels and their employees are allowed to access the Proprietary Best Western Computer System. Vendors and other third-parties are strictly prohibited from doing so.

**Yield-O-Matic's Conduct**

18. Many hoteliers sell hotel room nights over the Internet through third party websites ("Third Party Sites") such as Travelocity.com, Orbitz.com and Expedia.com. In order to do so, a hotelier must provide, and may periodically thereafter update, its room rates, availability, and other related information for each Third Party Site.

4

19. On information and belief, Yield-O-Matic offers a service (the "Yield-O-Matic Tool") that allows a hotelier client to update its hotel room rate information for multiple Third Party Sites simultaneously. In order to use the Yield-O-Matic Tool, a hotelier client must log into Yield-O-Matic's website and manually enter its hotel room rate information into an electronic form. Yield-O-Matic then utilizes an automated process in order to transmit that information to various Third Party Sites selected by the user. On information and belief, several Best Western Member Hotels utilize the Yield-O-Matic Tool in order to update their room rates through various Third Party Sites.

20. In or around February 2005, Yield-O-Matic contacted Best Western seeking to enter into an agreement under which Best Western would endorse Yield-O-Matic's Tool for use by Best Western Member Hotels. After reviewing the product and discussing the matter with Yield-O-Matic, Best Western indicated that it was not interested in entering into any such arrangement.

21. In or around July 2005, Best Western discovered that despite its refusal to endorse the Yield-O-Matic Tool, and without authorization from Best Western to access the Proprietary Best Western Computer System, Yield-O-Matic had begun soliciting various Member Hotels for their Confidential Login Information and using that information to log into the system without permission. For example, Best Western discovered that on June 20, 2005, Yield-O-Matic had sent an e-mail solicitation to Member Hotels suggesting that it had obtained authorization from Best Western to access the Proprietary Best Western Computer System (referenced in the solicitation as www.Online.BestWestern.com):

> Attention Best Western Hotel Owners! Find out what many Best Western Hotel Owners already know!
>
> We just added www.Online.BestWestern.com to our yielding program!
>
> Stop wasting your time yielding each extranet individually! Complete the same work in minutes instead of hours!
>
> Contact Yield-O-Matic Today!

5

22. Best Western also discovered that Yield-O-Matic was using the BEST WESTERN Marks on its Website. For example, Yield-O-Matic's website displays the BEST WESTERN Logo under the "Feedback" section of the site and the BEST WESTERN mark under the "Demo" and "Yieldable Channels" sections of the site.

23. On or around July 28, 2005, Best Western contacted Yield-O-Matic to explain its concerns about Yield-O-Matic's unauthorized access to the Proprietary Best Western Computer System, and its misleading solicitations to the Member Hotels suggesting that Best Western was somehow affiliated with or had approved of such access by Yield-O-Matic, and asked that Yield-O-Matic cease all such access and communications. Yield-O-Matic refused.

24. The next day, on July 29, 2005, Yield-O-Matic sent another e-mail to various Member Hotels, the subject line of which read: "More Best Western Member Hotels signing up for Yield-O-Matic." The body of the e-mail included the following text:

> July 28, 2005: Yield Channel Inc. Orlando, FL announced today that Best Western Member Hotels....are signing up in record numbers for Yield-O-Matic.com, a low-cost, hi-tech channel management program, which allows them to update their Best Western CRS together with all other Internet Providers in minutes instead of hours!

25. On August 19, 2005, Best Western sent a cease and desist letter ("C&D Letter") to Yield-O-Matic. In the C&D Letter, Best Western demanded that, among other things, Yield-O-Matic "permanently and immediately cease all access to" the Proprietary Best Western Computer System, all use of Best Western's trademarks, and all misleading communications to Hotel Members.

26. The same day, Best Western sent letters (the "Letters to Members") to the seventeen Member Hotels from which Best Western believed Defendants may have obtained Confidential Login Information. The Letters to Members unequivocally stated that: "**Under no circumstance** should access to [the Proprietary Best Western Computer System] ever be provided to any other person or company." The Letters to Members also asked that passwords that had been disclosed to Yield-O-Matic be

6

1  changed immediately, and that any authorization that had purportedly been granted to
2  Yield-O-Matic to use the passwords be revoked.

3      27.    On August 19, 2005, Best Western published and sent to its Member
4  Hotels a special edition of Best Western Today, a Best Western publication distributed
5  from time to time to all Member Hotels.  In it, Best Western states:  "The most
6  important rule to remember is '**DO NOT SHARE YOUR PASSWORD WITH**
7  **ANYONE**.'"

8      28.    Yield-O-Matic failed to respond to the August 19 C&D Letter.  Instead,
9  on or about August 25, 2005, Yield-O-Matic sent a mass e-mail (the "Mass E-Mail") to
10 Member Hotels, in which Yield-O-Matic gave its "reaction" to the Letters to Members.
11 The Mass E-mail acknowledges that, through the Letters to Members, Best Western
12 reminded the recipients of their obligation not to disclose Confidential Login
13 Information to Yield-O-Matic.  The Mass E-Mail also acknowledges Best Western's
14 Terms of Use for accessing the Proprietary Best Western Computer System, which
15 forbid access by non-employees and vendors such as the Defendants.  Nonetheless, in
16 the Mass E-Mail, Yield-O-Matic continues to solicit Member Hotels to disclose their
17 Confidential Login Information to Yield-O-Matic, and makes clear that Yield-O-Matic
18 intends to continue accessing the Proprietary Best Western Computer System.

19
20
### COUNT I:  INFRINGEMENT OF FEDERALLY REGISTERED TRADEMARK

21     29.    Best Western incorporates by reference paragraphs 1 through 28 of this
22 Complaint.

23     30.    This cause of action arises under § 32 of the Trademark Act of 1946,
24 codified as amended at 15 U.S.C. § 1114, for infringement of the federally registered
25 BEST WESTERN Marks.

26     31.    Best Western has not authorized Defendants' use of the BEST WESTERN
27 Logo or other BEST WESTERN Marks.
28

7

32. Without Best Western's consent, Defendants have been using and continue to use in commerce a reproduction, counterfeit, copy or colorable imitation of Best Western's registered marks in conjunction with the sale, offering for sale, advertising and promotion of their products and services.

33. Defendants' conduct is likely to cause mistake, cause confusion, or deceive in that consumers are likely to believe that Defendants are in some way approved by, associated or affiliated with, sponsored by, or connected with Best Western. On information and belief, Defendants' actions have caused actual confusion.

34. Defendants' conduct constitutes trademark infringement under the trademark laws of the United States, Lanham Act, 15 U.S.C. § 1114.

35. Unless enjoined, Defendants will be unlawfully and unjustly enriched as a result of their conduct. Defendants have caused, and unless enjoined, will continue to cause, irreparable harm to Best Western for which there is no adequate remedy at law. Best Western is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

36. By reason of Defendants' conduct, Best Western has sustained, and unless Defendants are enjoined, is likely to continue to sustain, substantial injury and damage. Defendants' acts of trademark infringement are willful and entitle Best Western to recover damages sustained as a result of Defendants' unlawful conduct, including three times Defendants' profits and Best Western's damages, or statutory damages up to $1,000,000, plus its costs of suit and attorneys' fees pursuant to 15 U.S.C. § 1117.

**COUNT II:  UNFAIR COMPETITION
UNDER § 43(a) OF THE LANHAM ACT**

37. Best Western incorporates by reference paragraphs 1 through 36 of this Complaint.

38. This cause of action arises under §43(a) of the Lanham Act, 15 U.S.C. § 1125(a), for false designation of origin and unfair competition.

39. Defendants have been using and continue to use in commerce a symbol, device, false designation of origin, or a false and misleading description or

8

representation of fact which is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association or Defendants with Best Western or as to origin, sponsorship, or approval of Defendants' services.  On information and belief, Defendants' actions have caused actual confusion.

40. Defendants' conduct constitutes trademark infringement and unfair competition, false designation of origin, and false representation in violation of 15 U.S.C. § 1125(a).

41. Unless enjoined, Defendants will be unlawfully and unjustly enriched as a result of their conduct.  Defendants have caused, and unless enjoined, will continue to cause, irreparable harm to Best Western for which there is no adequate remedy at law.  Best Western is therefore entitled to injunctive relief pursuant to 15 U.S.C. § 1116.

42. By reason of Defendants' conduct, Best Western has sustained, and unless Defendants are enjoined, is likely to continue to sustain, substantial injury and damage.  Defendants' conduct is willful and entitles Best Western to recover damages sustained as a result, including three times Defendants' profits and Best Western's damages, costs of suit and attorneys' fees pursuant to 15 U.S.C. § 1117.

### COUNT III:  VIOLATIONS OF THE FEDERAL COMPUTER FRAUD AND ABUSE ACT

43. Best Western incorporates by reference paragraphs 1 through 42 of this Complaint.

44. This cause of action arises under the Computer Fraud and Abuse Act, codified as amended at 18 U.S.C. § 1030 (the "CFAA").

45. The Proprietary Best Western Computer System is a "protected computer" under the CFAA.

46. On information and belief, Defendants have intentionally accessed the Proprietary Best Western Computer System without authorization, and intend to continue such unauthorized access, thereby impairing the integrity or availability of the data, programs, systems, or information residing thereon.

47. As result of Defendants' conduct, Best Western has, within one year, suffered an aggregate loss (as defined by the CFAA) exceeding $5,000 in value.

48. Unless enjoined, Defendants will be unlawfully and unjustly enriched as a result of their conduct. Defendants have caused, and unless enjoined, will continue to cause, irreparable harm to Plaintiff for which there is no adequate remedy at law. Best Western is therefore entitled to injunctive relief pursuant to 18 U.S.C. § 1030(g).

## COUNT IV:  INTENTIONAL INTERFERENCE WITH CONTRACT

49. Best Western incorporates by reference paragraphs 1 through 48 of this Complaint.

50. This cause of action arises under Arizona law.

51. Best Western and its Member Hotels operate under a licensing agreement that requires the Member Hotels to abide by Best Western's Rules and Regulations. Under Best Western's Rules and Regulations the Member Hotels must comply with Best Western's reservations system. In addition, anyone logging into the Member Website must agree to the Best Western Terms of Use. Member Hotels (and their operators and employees) are prohibited by these contracts from providing Confidential Login information to Defendants, or otherwise providing Defendants with access or a means to access the Proprietary Best Western Computer System.

52. Knowingly, Defendants have sought and are seeking, improperly – indeed, in violation of the federal Computer Fraud and Abuse and Lanham Acts – to induce Member Hotels to breach their obligations not to disclose the Confidential Login Information, so that Defendants may use that information to gain unauthorized access to the Proprietary Best Western Computer System.

53. As a direct and proximate result, Best Western has been damaged.

54. Unless enjoined, Defendants will be unlawfully and unjustly enriched as a result of their conduct. Defendants have caused, and unless enjoined, will continue to

10

1  cause, irreparable harm to Plaintiff for which there is no adequate remedy at law.  Best
2  Western is therefore entitled to injunctive relief.

### **PRAYER FOR RELIEF**

Best Western respectfully requests that the Court enter judgment in Best Western's favor and against Defendants as follows:

A. preliminarily and permanently enjoin Defendants from:

(1) using any of the BEST WESTERN Marks or confusingly similar marks;

(2) otherwise infringing Best Western's rights in the BEST WESTERN Marks;

(3) unfairly competing with Best Western or doing any other act or thing likely to induce the belief that Defendants' business, products, or services are in any way affiliated with Best Western's business, products or services, or in any way approved or sponsored by Best Western;

(4) soliciting member Hotels for any Confidential Login information or other proprietary Best Western information;

(5) accessing the Proprietary Best Western Computer System; and

(6) using in any way any information that Defendants may have accessed, viewed, copied or stored on or from the Proprietary Best Western Computer System.

B. enter an order requiring Defendants to conduct advertising to correct the confusion caused by their use of the BEST WESTERN Marks and other acts of unfair competition;

C. enter an order requiring Defendants to make an accounting of the profits they derived by reason of their unlawful acts, holding Defendants liable to Best Western for such profits, and awarding Best Western its actual damages;

D. enter an award of treble damages against Defendants as a result of their willful, wanton and deliberate infringement of the BEST WESTERN Marks,

1  including its reasonable attorneys' fees, prejudgment interest, and all costs of

2  court pursuant to 15 U.S.C. §§ 1117(b) and 1125(a);

3  E.     should Best Western so elect, enter an award of statutory damages up to

4  $1,000,000, pursuant to U.S.C. §§ 1117(c); and

5  F.     award Best Western such further relief as the Court deems just and proper.

6  DATED this 30th day of August 2005.

David H. Youssefi
BEST WESTERN INTERNATIONAL, INC.
6201 North 24th Parkway
Phoenix, Arizona  85016-2023
(602) 957-5758
(602) 957-5551

And

MEYER, HENDRICKS & BIVENS, P.A.


By /s David W. Cowles
Jennifer P. Nore
David W. Cowles
3003 North Central Ave., Suite 1200
Phoenix, Arizona 85012-2915

Attorneys for Plaintiff

436342